*177
 
 OPINION OF THE COURT
 

 Simons, J.
 

 Petitioners Salvano and Coon were formerly employed as account executives in respondent Merrill Lynch’s Northbrook, Illinois, office. Petitioner Tate was similarly employed in
 
 *178
 
 Louisville, Kentucky. On October 30, 1992, each abruptly resigned his position with Merrill Lynch and began working with Prudential Bache, one of Merrill Lynch’s competitors. On November 2, respondent Merrill Lynch brought two separate actions for damages and injunctive relief in the Federal courts of Illinois and Kentucky. On November 4 the Illinois court temporarily enjoined petitioners Salvano and Coon from soliciting or accepting business from their former Merrill Lynch customers and against using, disclosing or retaining copies of any Merrill Lynch records pending determination of the disputes by arbitrators. Petitioners filed a demand for arbitration before the New York Stock Exchange on November 5, 1992. The Kentucky court enjoined Tate on November 10.
 

 On November 4 petitioners also moved in New York Supreme Court for an order compelling respondent to submit to expedited arbitration pursuant to article 75 of the CPLR On November 6, Supreme Court granted the petition, ordering the parties to proceed to expedited arbitration. It issued a further order on November 10, in response to petitioners’ motion, directing that the arbitration take place on November 12. The issue on this appeal is whether Supreme Court had the authority to order the parties to proceed absent any provision explicitly authorizing expedited arbitration in the parties’ agreements. We conclude that it did not.
 

 I
 

 When petitioners started working for respondent, each signed two documents: an Account Executive Trainee Agreement (the contract of employment) and the standard Uniform Application for Securities Industry Registration (Form U-4). Form U-4 provides in paragraph 5 that any claim or controversy between the applicant and his firm will be arbitrated under the rules, constitutions or by-laws of the organizations in which the applicant is registered. The parties agree that the Constitution and Rules of the New York Stock Exchange govern their arbitration. They differ on whether the provisions of those documents allow a court to compel expedited arbitration.
 

 When first ordered to proceed to expedited arbitration, respondent wrote Robert Clemente, then the Manager (and now the Director) of Arbitration at the NYSE requesting that the arbitration be carried out in strict compliance with the NYSE Rules. Those relevant to this matter require eight days’ notice of the arbitration, 20 days in which to answer the
 
 *179
 
 claim, the opportunity to file and exchange pleadings and conduct discovery, and an opportunity to join third parties. The Rules also require that, after evaluating the acceptability of the arbitrators, a party may submit one peremptory challenge and unlimited challenges for cause to the members of the panel. Respondent asserted its right to exercise these provisions as well. Respondent was advised that it would not be permitted to exercise a peremptory challenge, because there was no provision for peremptory challenges "[u]nder the procedures for an expedited arbitration.” The NYSE Constitution and Rules, however, contain no provision for expedited arbitration. Indeed, in a later affidavit, Clemente admitted that the New York Stock Exchange is not empowered to expedite arbitration of a claim without the consent of both parties to the arbitration: expedited arbitration is permitted only if the Exchange is a party to the arbitration and then only pursuant to a court order.
 

 After the parties agreed that petitioners’ claims for damages would be heard under the normal arbitration schedule, the arbitration of petitioners’ claims for injunctive relief went forward on November 12, as ordered, over respondent’s objections.
 
 [1]
 
 Although respondent executed all the consents required to effect the expedited arbitration, it made clear that it did so only to avoid being held in contempt of Supreme Court’s order.
 
 [2]
 
 The arbitrators subsequently entered an award "lifting the injunctions” against petitioners Salvano and Coon and the "freeze order” against petitioner Tate. Petitioners moved to confirm, and respondent cross-moved to vacate, the award. On January 8, 1993, Supreme Court confirmed the arbitrators’ award. The Appellate Division affirmed, concluding that Supreme Court had authority to order expedited arbitration pursuant to CPLR 7506 (b) and that the order was neither preempted by, nor inconsistent with, the provisions of the Constitution and Rules of the New York Stock Exchange or the Federal Arbitration Act (200 AD2d 431). We granted respondent leave to appeal.
 

 
 *180
 
 II
 

 Petitioners maintain that the court’s order for expedited arbitration was warranted under both State and Federal statutes and the arbitration agreement.
 

 Under settled law, the arbitration of disputes concerning employment in the securities industry and the enforceability of the arbitration clause embodied in petitioners’ U-4 Form applications are governed by the Federal Arbitration Act (FAA)
 
 (see, Fletcher v Kidder, Peabody & Co.,
 
 81 NY2d 623,
 
 cert denied
 
 — US —, 114 S Ct 554;
 
 Singer v Jefferies & Co.,
 
 78 NY2d 76;
 
 Flanagan v Prudential-Bache Sec.,
 
 67 NY2d 500). If the parties’ arbitration agreement contains a choice of law clause providing that the law of a particular State will govern their arbitration, the parties’ choice will be given effect if to do so will not conflict with the policies underlying the FAA; otherwise, the FAA applies
 
 (see, Volt Information Sciences v Leland Stanford Jr. Univ.,
 
 489 US 468;
 
 Matter of Smith Barney, Harris Upham & Co. v Luckie,
 
 85 NY2d 193 [decided today]).
 
 [3]
 

 Volt
 
 makes clear, however, that only an explicit choice will displace the provisions of the FAA. Here, the parties’ membership in the New York Stock Exchange and their agreement to arbitrate according to its Constitution and Rules, even taken together, do not rise to the level of an explicit choice of New York State law to govern their arbitration. Accordingly, the provisions of the FAA, and not those of CPLR article 75, apply in this case.
 

 
 *181
 
 Preliminarily, it should be noted that even if article 75 applied, as the courts below believed, it does not provide a basis for Supreme Court’s order of expedited arbitration. CPLR 7506 (b) authorizes the court to direct the arbitrator, but not the parties, to proceed promptly with the arbitration. CPLR 7503 (a) authorizes the court to compel arbitration where one party is aggrieved by the failure of the other to arbitrate. But the arbitrators did not delay arbitration here and respondent did not object to arbitration of the parties’ dispute, or fail to participate in the arbitration; it merely objected to the expedited procedure. Finally, CPLR 7502 (c) grants the court only the limited authority to issue an order of attachment or a preliminary injunction in connection with an arbitrable controversy and does not, despite petitioners’ contentions, endow the court with broad discretionary powers to fashion other injunctive orders "in aid of arbitration.”
 

 Nor does the FAA contain any provision which by its terms authorizes an order of expedited arbitration. Under section 3 a court’s power to stay an action pending arbitration is limited by "the terms of the agreement”. Similarly, section 4, which provides that "[a] party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written, agreement for arbitration” may petition the court for an order directing that such arbitration proceed, empowers the court to proceed only "in the manner provided for in such agreement”
 
 (see,
 
 9 USC §§ 3, 4).
 

 Petitioners contend that because the FAA also contains no provision precluding expedited arbitration, there is no barrier to invoking either a State statute, or the court’s general equitable power, to order the parties to arbitrate on an expedited basis. However,
 
 Volt
 
 makes abundantly clear that the primary policy and purpose of the FAA is to "ensure the enforceability, according to their terms, of private agreements to arbitrate”
 
 (see, Volt Information Sciences, supra,
 
 at 476). The goal of the statute is not to promote arbitration as an end in itself, or even to promote "the expeditious resolution of claims” but to "rigorously enforce” arbitration agreements according to their terms
 
 (see, Dean Witter Reynolds v Byrd,
 
 470 US 213, 219-221). Accordingly, courts have refused to consolidate related arbitration hearings in the absence of any provision for consolidation in the parties’ agreement, even though consolidation would result in a more economical arbitration process
 
 (see, Government of United Kingdom v Boeing
 
 
 *182
 

 Co.,
 
 998 F2d 68, 72-73 [2d Cir];
 
 Weyerhauser Co. v Western Seas Shipping Co.,
 
 743 F2d 635 [9th Cir],
 
 cert denied
 
 469 US 1061), or to direct that the parties arbitrate in a forum other than that specified in their agreement, even though permitting the choice of a different forum might seem fairer or more suited to the needs of a particular party
 
 (see, PaineWebber, Inc. v Rutherford,
 
 903 F2d 106 [2d Cir];
 
 Merrill Lynch, Pierce, Fenner & Smith v Georgiadis,
 
 903 F2d 109 [2d Cir]).
 

 These decisions do not specifically address the question of expedited arbitration, but their rulings illustrate that in the absence of an established ground for setting aside a contractual provision, such as fraud, duress, coercion or unconscionability, a court must enforce the parties’ arbitration agreement according to its terms. Supreme Court’s order would have been proper only if the arbitration agreement itself — here the Constitution and Rules of the New York Stock Exchange— provided for expedited arbitration.
 

 Finally, petitioners seek support for the court’s order in the provisions of the agreement. They contend that Rule 621 of the NYSE, which gives the arbitrators the power "to interpret and determine the applicability of all provisions under this Code”, implicitly provides the arbitrators with the authority to compel expedited arbitration. If the arbitrators can compel expedited arbitration, so the argument goes, so can the courts.
 

 The short answer to that contention is that arbitration agreements are contracts and must be interpreted under the accepted rules of contract law
 
 (see, Matter of Cowen & Co. v Anderson,
 
 76 NY2d 318;
 
 Matter of American Ins. Co. [Messinger
 
 — Aetna
 
 Cas. & Sur. Co.],
 
 43 NY2d 184). The court’s role is limited to interpretation and enforcement of the terms agreed to by the parties; it does not include the rewriting of their contract and the imposition of additional terms
 
 (see, Matter of Astoria Med. Group [Health Ins. Plan],
 
 11 NY2d 128). To read into the NYSE Rules a provision authorizing compulsory expedited arbitration would be to fundamentally modify the terms of the parties’ contract and force respondent to arbitrate in a manner contrary to the agreement to which it has assented
 
 (see, Matter of Cowen, supra,
 
 at 321-322;
 
 Szuts v Dean Witter Reynolds,
 
 931 F2d 830, 831-832 [11th Cir]). As the Supreme Court has stated:
 

 "Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see
 
 *183
 
 fit. Just as they may limit by contract the issues which they will arbitrate [citation omitted] so too may they specify by contract the rules under which that arbitration will be conducted”
 
 (see, Volt Information Sciences v Leland Stanford Jr.
 
 Univ489 US 468, 479,
 
 supra).
 

 Petitioners note, correctly, that respondent has on prior occasions sought and obtained orders from other courts directing expedited arbitration before the New York Stock Exchange. That does not preclude it, however, from arguing here, albeit inconsistently, that the NYSE Constitution and Rules do not authorize such orders.
 

 III
 

 Inasmuch as the Supreme Court was without power to order expedited arbitration, the award must be vacated. However, the authority for that judicial action is not readily found in either the FAA or article 75 of the CPLR. The recognized statutory grounds for vacatur include setting aside an award procured by corruption, fraud or undue means; partiality or corruption on the part of the arbitrators; misconduct or misbehavior by the arbitrators, by which the rights of a party were prejudiced; and action by the arbitrators in excess, or imperfect execution, of their powers
 
 (see,
 
 CPLR 7511; 9 USC § 10 [d]). Not even an error of law on the part of the arbitrators will suffice without a showing of one of these statutory grounds for vacatur.
 

 Respondent contends that the arbitrators committed misconduct when they refused to postpone the hearing "upon sufficient cause shown”, and by their other actions taken in furtherance of the expedited procedure
 
 (see,
 
 9 USC § 10 [a] [3]). We cannot agree that the arbitrators’ actions can be so viewed when they were undertaken to comply with a court order. Nevertheless, the wholesale abrogation of respondent’s procedural and substantive rights under the arbitration agreement may properly be characterized as action exceeding the scope of the arbitrators’ powers, even when undertaken at the direction of the court. When the arbitrators act in excess of their powers, the award can be vacated even in the absence of a specific showing that the rights of any party have been prejudiced
 
 (see,
 
 9 USC § 10 [a] [4]).
 

 Addressing the matters raised by the dissent, we find little purpose in analyzing what the Federal court in Illinois, which
 
 *184
 
 first acquired jurisdiction in the
 
 Salvano
 
 and
 
 Coon
 
 matter, or the Federal court in Kentucky, could or should have done in exercising their equitable powers under the FAA. Manifestly, the Federal court orders were authorized by the parties’ contracts, as well as by the provisions of the FAA, but this is not an equity proceeding and the propriety or sufficiency of those orders is not before us.
 
 [4]
 
 This is a contract action involving an order of a State court compelling expedited arbitration contrary to the parties’ agreement and the dissent fails to identify any authority, in the contract or elsewhere, justifying the order under attack.
 

 The court could not compel expedited arbitration under State law nor did Federal law clearly authorize its action. The dissent contends that sections 3 and 4 of the Federal Arbitration Act justified the court’s action. It bases its position on general language found in
 
 Southland Corp. v Keating
 
 (465 US 1, 12;
 
 see,
 
 dissenting opn, at 189-190) but the Supreme Court has never held that State courts may use the procedures embodied in sections 3 and 4 to implement the substantive powers granted the courts by section 2. Because the power to stay trial of an arbitrable matter contained in section 3 refers ambiguously to a suit "in any of the courts of the United States,” the State courts have read its provisions as equally applicable in State as well as Federal court. However, as the Supreme Court itself has pointed out, it is "less clear * * * whether the same is true of an order to compel arbitration under §4 of the Act,” because section 4 speaks only of the authority of "any United States district court” to issue such an order
 
 (see, Moses H. Cone Hosp. v Mercury Constr. Corp.,
 
 460 US 1, 26). Indeed, the Supreme Court has expressly noted that the question of whether sections 3 and 4 apply to State
 
 *185
 
 courts remains open
 
 (see, Volt Information Sciences v Leland Stanford Jr. Univ.,
 
 489 US 468, 477, n 6,
 
 supra).
 

 [5]
 

 Nor could the State court’s power to expedite arbitration be derived from the arbitration agreement itself because the agreement contains no provisions dealing with expedited arbitration. The dissent maintains that the contract’s silence on the subject can somehow be interpreted as a grant of power to the courts to expedite arbitration and that it should be so interpreted by applying the familiar rule that ambiguities in a contract are to be construed against the draftsman (dissenting opn, at 191). Assuming such an ambiguity can be found, however, the contract provisions governing the parties’ arbitration in this case are found in the Rules and Constitution of the New York Stock Exchange and Merrill Lynch did not draft either the Rules or the Constitution.
 

 To be sure, in arbitration as in other areas, the procedures of the law can be used for personal advantage, by employees no less than employers
 
 (see, e.g., Downing v Merrill Lynch, Pierce, Fenner & Smith,
 
 725 F2d 192). The protection against being prejudiced by such maneuvering in arbitration cases is a contract which clearly and unambiguously sets forth the rights of both parties.
 

 We conclude that the contract in this case did not give petitioner a right to expedited arbitration and since no other authority justified Supreme Court’s order, the arbitration award must be vacated. We vacate, not because we believe the arbitrators were guilty of legal error or because they misread the contract, as the dissent contends
 
 (see,
 
 dissenting opn, at 191-192), but because an erroneous court order compelled the arbitrators to expedite the proceedings contrary to the provisions of the arbitration contract and resulted in Merrill Lynch’s losing several substantial contract rights. In vacating the arbitration
 
 *186
 
 award, we recognize the purpose of the FAA is to foster arbitration but to do so on the parties’ terms.
 

 Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed, without costs, the arbitrators’ award dated December 7, 1992 vacated, and the parties are directed to submit their claims in arbitration to a panel of New York Stock Exchange Arbitrators in accordance with the provisions of the New York Stock Exchange Constitution and Rules.
 

 Chief Judge Kaye (dissenting). Having obtained its proverbial "cake” in the form of a Federal court injunction prohibiting former employees from soliciting or accepting business from their former customers (thus impairing their ability to work in the securities industry), Merrill Lynch is getting to eat it too, by denial in the State court of expedited arbitration. Indeed, Merrill Lynch effectively gets a double helping, in that the firm will now have the opportunity to relitigate the injunctions which the arbitration panel more than two years ago decided should be terminated.
 

 The situation presented in this case — former Merrill Lynch employees, hamstrung from soliciting clients, who seek to resolve the underlying controversy between them by expediting arbitration — is one familiar to courts, both Federal and State, throughout the Nation
 
 (see, e.g., Merrill Lynch, Pierce, Fenner & Smith v Bradley,
 
 756 F2d 1048, 1051, n 1 [4th Cir] ["This situation represents a recurring problem. In their briefs to this Court the parties have cited sixty-four (64) federal and state cases involving similar fact patterns. Most of these decisions are unreported.”]).
 
 [1]
 

 
 *187
 
 Thus, where a Merrill Lynch broker has left its employ to work for a competitor, the firm has promptly filed a motion in Federal court for a preliminary injunction and then, upon securing that relief, opposed the employee’s subsequent efforts to proceed expeditiously in the very arbitration process in which the firm contractually obligated itself to engage. As one Federal court characterized it:
 

 "To provide an avenue for injunctive relief in the district courts, even though the subject matter of the case is arbitrable under the [Federal] Arbitration Act, will add yet another weapon in a litigant’s arsenal of delaying tactics. Thus, even if a recalcitrant party knows its dispute is subject to arbitration under the Arbitration Act, it will file a motion for a preliminary injunction in federal district court in an attempt to delay arbitration and divert its opponent’s attention and resources away from expeditiously presenting the substance of the controversy to the arbitrators.”
 
 (Merrill, Lynch, Pierce, Fenner & Smith v Thomson,
 
 574 F Supp 1472, 14784479 [ED Mo 1983],
 
 supra; see also, Moses H. Cone Hosp. v Mercury Constr. Corp.,
 
 460 US 1, 26 [describing "recalcitrant party free to sit and do nothing,” while its adversary "would have no sure way to proceed with its claims except to return to federal court * * * a pointless and wasteful burden on the supposedly summary and
 
 *188
 
 speedy procedures prescribed by the (Federal) Arbitration Act.”].)
 

 Like the trial court and Appellate Division in the case now before us, I am convinced that neither the law nor the arbitration agreements at issue require us to countenance such an unjust result, and therefore I respectfully dissent.
 

 There can be little question that the Federal courts in Kentucky and Illinois which originally issued the preliminary injunctions in the cases before us would have had the authority also to expedite the arbitrations. Indeed, such orders would have been no more than a natural corollary to the courts’ jurisdiction in equity.
 

 The seemingly curious failure of these courts to expedite the arbitrations may be explained by the particular chronology of these litigations, which began with applications in New York State court to compel expedited arbitration.
 
 [2]
 
 Thus, when the Kentucky court first issued injunctive relief on November 10, 1992, New York Supreme Court had already signed an order, dated November 6, 1992, instructing the parties to proceed with an expedited arbitration. As the Kentucky court wrote 10 days later, "It is appropriate for New York courts to interpret * * * the arbitration provision * * * New York courts have ordered arbitration * * * Although Merrill Lynch has appealed the New York arbitration order, this Court has no interest in or reason to interfere with the work of the arbitration panel”.
 

 The mere fortuity that the New York court was the first and only jurisdiction asked to consider the question of arbitrability in these matters, while the Federal courts were asked to provide Merrill Lynch with temporary injunctive relief against solicitation by the brokers, should not yield a different result.
 

 As noted above, like the arbitrators in a recent Second
 
 *189
 
 Circuit case, the New York Stock Exchange (NYSE) panel here, after a full evidentiary hearing, ultimately decided that the Federal court preliminary injunctions were unwarranted and should be terminated:
 

 "The heart of the controversy * * * was plaintiffs’ ability to carry on business with their alleged clients * * * The crux of the relief sought by Merrill Lynch was an injunction against the plaintiffs to counter the potential harm to the firm from the former brokers’ continued solicitation of their old customers. Merrill Lynch was squarely rebuffed by the arbitrators in this regard.”
 
 (Blumenthal v Merrill Lynch, Pierce, Fenner & Smith,
 
 910 F2d 1049, 1055 [2d Cir 1990],
 
 supra; see also, Blumenthal v Merrill Lynch, Pierce, Fenner & Smith,
 
 1991 US Dist LEXIS 8555 [SD NY] [court issued sanctions against Merrill Lynch in connection with its filing of motion seeking to overturn the NYSE arbitration panel’s decision].)
 

 The same statutory provisions and policies underlying the Federal Arbitration Act (FAA) which courts originally used to justify the issuance of preliminary injunctions in these types of disputes supports the issuance of an order expediting the process here.
 
 [3]
 
 Specifically, section 2 of the FAA provides that arbitration agreements involved in interstate commerce are valid and enforceable. Section 3 accordingly gives courts the authority to stay the "trial of [an] action” pending arbitration in accordance with the terms of the parties’ agreement. Section 4 of the FAA, in turn, grants a court the authority, once it has determined that a valid arbitration agreement is in place, to "make an order directing [a recalcitrant party] to proceed to arbitration in accordance with the terms of the agreement.”
 

 Though section 4 of the FAA speaks of enforcement in "any
 
 *190
 
 United States district court,” the Supreme Court has held that the substantive provisions of section 2 are binding as well upon State courts
 
 (Southland Corp. v Keating,
 
 465 US 1, 14-15) and has suggested that State courts should apply the policy, if not the explicit language, behind the procedural provisions contained in sections 3 and 4
 
 (Southland Corp. v Keating,
 
 465 US, at 12;
 
 Moses H. Cone Hosp. v Mercury Constr. Corp.,
 
 460 US, at 26;
 
 see also,
 
 Note,
 
 The Reach of the Federal Arbitration Act: Implications of State Procedural Law,
 
 70 N Dak L Rev 459, 461 [1994]).
 

 Applying these provisions, the Second Circuit affirmed a District Court’s order compelling expedited arbitration in conjunction with the issuance of a preliminary injunction, reasoning as follows:
 

 "[I]n our view, the pro-arbitration policies reflected in [the FAA and Supreme Court decisions interpreting it] are furthered, not weakened, by a rule permitting a district court to preserve the meaningfulness of the arbitration through a preliminary injunction. Arbitration can become a 'hollow formality’ if parties are able to alter irreversibly the status quo before the arbitrators are able to render a decision in the dispute. [Citations omitted.] A * * * court must ensure that the parties get what they bargained for — a meaningful arbitration of the dispute.”
 
 (Blumenthal v Merrill Lynch, Pierce, Fenner & Smith,
 
 910 F2d 1049, 1053,
 
 supra.)
 

 In
 
 Merrill Lynch, Pierce, Fenner & Smith v Bradley
 
 (756 F2d 1048, 1052 [4th Cir]), the Fourth Circuit reached the same result, concluding:
 

 "We do not believe that Congress would have enacted a statute intended to have the sweeping effect of stripping the federal judiciary of its equitable powers in all arbitrable commercial disputes without undertaking a comprehensive discussion and evaluation of the [FAA’s] effect. Accordingly, we conclude that the language of § 3 [of the FAA] does not preclude a district court from granting one party a preliminary injunction to preserve the status quo pending arbitration.”
 

 Given the logic of these cases on the one hand — that courts retain their equitable power under the FAA to issue prelimi
 
 *191
 
 nary injunctions pending arbitration — it seems analytically inconsistent for this Court to rule, on the other hand, that courts lack the authority to issue orders expediting the arbitration process. If it was appropriate for courts to interpret the language of section 3 of the FAA broadly enough to permit the issuance of court-ordered preliminary injunctions pending arbitration, the policy, if not the language, underlying section 4 appears sufficiently general to allow a court to order expedited arbitration so that the terms of the preliminary injunction are indeed only preliminary. Otherwise, the arbitration process which Merrill Lynch agreed to undertake becomes precisely the "hollow formality” the Second Circuit predicted in
 
 Blumenthal.
 

 I therefore cannot agree that the FAA — which unquestionably applies in this case — negates any authority a court may have to order the parties to engage in expedited arbitration.
 

 I disagree as well with the Court’s conclusion that the parties’ agreement precludes expedited arbitration. In essence, the majority reasons that though the Form U-4 and applicable NYSE Rules are silent as to the availability of expedited arbitration, the parties, by their silence, implicitly agreed that no expedited process was permissible and thus, under the FAA, the court lacked the authority to expedite the arbitration. While I understand that the FAA requires that arbitration agreements be interpreted according to their terms as the contracts they are, when interpreting Merrill Lynch’s intent with respect to the agreement itself, it seems relevant that the New York Stock Exchange had in fact conducted expedited arbitrations in the past, at times even upon the request of Merrill Lynch.
 

 I am also mindful that the agreement was a form agreement written by Merrill Lynch, and that basic principles of contract law support strictly interpreting the agreement against the drafter. Moreover, "[g]ood faith performance or enforcement of a contract emphasizes * * * consistency with the justified expectations of the other party * * * Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified.” (Restatement [Second] of Contracts § 205, comments
 
 a, d; see also, Wood v Duff-Gordon,
 
 222 NY 88 [Cardozo, J.].)
 

 Finally, I am concerned that the Court is misconstruing the limited nature of judicial review of arbitral awards under the FAA. As the Court acknowledges, the FAA does not permit a
 
 *192
 
 losing party to appeal an arbitrator’s decision solely on grounds of legal error. Accordingly, the Supreme Court has made it clear that the provisions of the FAA which permit courts to vacate or modify arbitral awards under certain limited circumstances should be strictly construed
 
 (Shearson/ American Express v McMahon,
 
 482 US 220, 232;
 
 Wilko v Swan,
 
 346 US 427, 435; 9 USC §§ 10, 11). By vacating the award here based on its own independent view that the applicable agreement and rules prohibited an expedited process, the Court is doing what the Supreme Court cautioned against when interpreting the analogous provisions of the Labor-Management Relations Act of 1947 (29 USC § 141
 
 et seq.)
 
 — substituting its own reading of arguably ambiguous provisions for that of the arbitrator
 
 (Paperworkers v Misco, Inc.,
 
 484 US 29, 38 ["Courts * * * do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts * * *. The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.”]).
 

 I would therefore affirm the Appellate Division order confirming the arbitrators’ award denying injunctive relief.
 

 Judges Titone, Bellacosa, Smith and Ciparick concur with Judge Simons; Chief Judge Kaye dissents in a separate opinion; Judge Levine taking no part.
 

 Order, insofar as appealed from, reversed, etc.
 

 [1]
 

 . At oral argument the parties acknowledged that the damage arbitration had been resolved while the appeals in this matter were pending.
 

 [2]
 

 . Respondent appealed Supreme Court’s November 10 order to the Appellate Division, First Department, and requested a stay of the arbitration. A Justice of that Court denied the stay upon the ground that the arbitration process was already underway and, on December 8, 1992, one day after the arbitrators rendered their award, the Court dismissed respondent’s appeal as moot.
 

 [3]
 

 . The contracts of employment contain choice of law provisions. In the case of petitioners Salvano and Coon, the Trainee Agreement provided that it "shall be construed, and the validity, performance and enforcement thereof shall be governed by the laws of the State of Illinois.” Petitioner Tate’s Agreement contained the same provision, specifying the laws of New York. However, petitioners do not contend that these contracts govern the arbitration, which is controlled by the separate agreement embodied in the Constitution and Rules of the New York Stock Exchange.
 

 The employment contracts of petitioners Salvano and Coon also contain a clause by which the employee consents to the imposition of temporary or permanent injunctive relief. Merrill Lynch inserted such an express provision into its standard Account Executive Agreement in response to recurring litigation over whether Merrill Lynch was entitled to restrain, pending arbitration, its former employees from soliciting Merrill Lynch clients and from using documents and information obtained during their employment. Petitioner Tate executed his contract of employment prior to Merrill Lynch’s adoption of this form Agreement. Thus, his contract contains no such express consent. Petitioners do not contend, however, that Tate was improperly subjected to injunctive relief by the Federal District Court, or that his position materially differs from that of the other two petitioners.
 

 [4]
 

 . The disparity between the dates the Illinois and New York courts acquired jurisdiction as stated in this opinion and in the dissent rest upon the dissent’s assumption that the proceeding in New York was commenced on November 2, 1992 when petitioner sought a request for judicial intervention and the majority’s reliance on November 4, the date petitioners’ motion was returnable and argued before the New York Supreme Court. The date is relevant only insofar as the dissent contends that the Illinois court could have and would have expedited arbitration except that Supreme Court had already ordered expedited arbitration. Nothing in the record indicates, however, that the District Court was aware of any proceedings in the New York courts or that, but for the Supreme Court’s "action”, it would have expedited the arbitration.
 

 [5]
 

 . The dissent notes that Federal courts which have been faced with a request for expedited arbitration have divided nearly equally on its availability. None of the cited appellate decisions involves a determination that expedited arbitration is available, however, and most of the District Court decisions are no more than unpublished summary trial court orders, not full decisions. The vast majority of them are singularly devoid of analysis. In
 
 Merrill Lynch, Pierce, Fenner & Smith v Tobias
 
 (US Dist Ct, ND 111, index No. 90C-2Q210), one of the few cases in which the court both engaged in analysis and addressed the actual terms of the parties’ arbitration agreement, the court concluded in a few brief lines that it had no authority to order expedited arbitration because the Constitution and Rules of the New York Stock Exchange made no provision for it.
 

 [1]
 

 . As is evident from the numerous reported and unreported decisions appended to each of the parties’ briefs, a slim majority, or 12 out of the 22 courts to have grappled with this issue, have concluded that a court does have the authority to impose expedited arbitration in these circumstances.
 
 (See, Merrill Lynch, Pierce, Fenner & Smith v Bradley,
 
 756 F2d 1048 [4th Cir],
 
 supra; Merrill, Lynch, Pierce, Fenner & Smith v Thomson,
 
 574 F Supp 1472 [ED Mo];
 
 Blumenthal v Merrill Lynch, Pierce, Fenner & Smith,
 
 910 F2d 1049 [2d Cir];
 
 Merrill Lynch, Pierce, Fenner & Smith v DeCaro,
 
 577 F Supp 616 [WD Mo];
 
 Merrill Lynch, Pierce, Fenner & Smith v Murphy,
 
 US Dist Ct, D NJ, Nov. 29, 1993, Debevoise, J., index No. CV-93-5262;
 
 Merrill Lynch, Pierce, Fenner & Smith v Kamberis,
 
 US Dist Ct, D Kan, Dec. 21, 1992, O’Connor, J., index No. 92-2496;
 
 Merrill Lynch, Pierce, Fenner & Smith v Sheff,
 
 US Dist Ct, ND Tx, May 10 and 19, 1991, Fish, J., index No. CA-3-91-0877-G;
 
 Bradford & Co. v Brown,
 
 Cir Ct, Va, Jan. 22, 1991, index No. 9100033;
 
 Rainer v Merrill Lynch, Pierce, Fenner & Smith,
 
 US Dist Ct, ED Pa, Sept. 26 and Oct. 31, 1988, Newcomer, J., index No. 88-8306;
 
 Merrill
 
 
 *187
 

 Lynch, Pierce, Fenner & Smith v Neihart,
 
 US Dist Ct, D Kan, Aug. 10, 1988, O’Connor, J., index No. 88-2397-0;
 
 Kerr v Merrill Lynch, Pierce, Fenner & Smith,
 
 1987 US Dist LEXIS 5363 [ED Pa];
 
 Tramo v Merrill Lynch, Pierce, Fenner & Smith,
 
 1987 US Dist LEXIS 1582 [ED Pa];
 
 but see, Merrill Lynch, Pierce, Fenner & Smith v Cunningham,
 
 736 F Supp 887 [ND Ill];
 
 Merrill Lynch, Pierce, Fenner & Smith v Mathes,
 
 US Dist Ct, ED Wash, Aug. 2, 1990, McDonald, J., index No. CY-90-3060-AAM;
 
 Merrill Lynch, Pierce, Fenner & Smith v Tobias,
 
 US Dist Ct, ND Ill, July 26, 1990, Roszkowski, J., index No. 90C-20210;
 
 Merrill Lynch, Pierce, Fenner & Smith v Patinkin,
 
 1991 WL 83163 [ND Ill];
 
 Merrill Lynch, Pierce, Fenner & Smith v Rowell,
 
 US Dist Ct, MD Ga, June 19, 1991, Owens, J., index No. CA-91-170-2-MAC;
 
 Merrill Lynch, Pierce, Fenner & Smith v Price,
 
 1989 WL 108412 [Del Ch];
 
 Merrill Lynch, Pierce, Fenner & Smith v Brady,
 
 US Dist Ct, ED Pa, Aug. 13, 1990, Gawthrop, J., index No. 90-5044;
 
 Johanneman v Merrill Lynch, Pierce, Fenner & Smith,
 
 US Dist Ct, ED Ky, Jan. 29, 1993, Forester, J., index No. 92-517;
 
 Merrill Lynch, Pierce, Fenner & Smith v Martin,
 
 US Dist Ct, MD Fla, May 8 and 15, 1992, Schlesinger, J., index No. 92-386-Civ-ORL-20;
 
 Merrill Lynch, Pierce, Fenner & Smith v Gesten,
 
 US Dist Ct, SD Fla, Aug. 15,1994, King, J., index No. 94-1446.)
 

 [2]
 

 . The majority notes that petitioners moved in Supreme Court on November 4 (majority opn, at 178) and that the Illinois Federal court "first acquired jurisdiction” in two of the three cases involving petitioners (majority opn, at 184). In fact, on November 2, 1992, relief was sought
 
 both
 
 by the brokers in New York State court (seeking expedited arbitration) and by Merrill Lynch in Illinois Federal court (seeking an order temporarily restraining the brokers from soliciting clients). Merrill Lynch’s complaint in the Illinois action made no mention of the fact that the parties’ dispute was subject to binding arbitration. In granting the order temporarily restraining solicitation, the Illinois court expedited discovery, but that action was ultimately subsumed in the New York arbitration.
 

 [3]
 

 .
 
 See, e.g., Merrill Lynch, Pierce, Fenner & Smith v Salvano,
 
 999 F2d 211, 214 (7th Cir) (”[T]he weight of federal appellate authority recognizes some equitable power on the part of the district court to issue preliminary injunctive relief in disputes that are ultimately to be resolved by an arbitration panel”);
 
 see also,
 
 Comment,
 
 Injunctions Pending Arbitration and the Federal Arbitration Act: A Perspective From Contract Law,
 
 54 U Chi L Rev 1373. As the Court notes at footnote 3 of its opinion, Merrill Lynch ultimately amended its employment forms to include a provision whereby its employees consented to the imposition of injunctive relief. Only two of the three employee agreements in this case, however, contain the amended provision.