Matter of Banc of Am. Sec. v Knight (2004 NY Slip Op 24232)

BODY {
font-family : "Times New Roman", Times, serif;
font-size : larger;
}

P {
line-height: 150%;
text-indent: 2em
}

Matter of Banc of Am. Sec. v Knight

2004 NY Slip Op 24232 [4 Misc 3d 756]

May 19, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Tuesday, November 9, 2004

[*1]
In the Matter of Banc of America Securities, Petitioner,vParker W. Knight, Jr., Respondent.
Supreme Court, New York County, May 19, 2004








APPEARANCES OF COUNSEL


Epstein, Becker & Gree for petitioner. Hoguet, Newman & Regal for respondent.
{**4 Misc 3d at 757} OPINION OF THE COURT
Lewis Bart Stone, J.
This proceeding was commenced by petitioner Banc of America Securities (BAS), by motion to this court dated October 30, 2003, pursuant to article 75 of the Civil Practice Law and Rules to vacate an arbitration award rendered on October 1, 2003, in favor of respondent, Parker W. Knight, Jr. The arbitration was conducted before arbitrators designated by the National Association of Securities Dealers (NASD) and conducted pursuant to NASD rules. BAS claims that "the Award is irrational, the arbitrators exceeded their powers, and that the Award is in manifest disregard of the law."
Knight began employment for BAS in July 1999 as a managing director and head of International Syndicated Finance. In 2000, Knight received a guaranteed bonus for 1999. In 2001, he received a discretionary bonus of $1.6 million for 2000. In November 2001, BAS offered Knight a position in London, which he accepted. Knight asserted that he was told that his compensation would be the same as the previous year. Knight arranged to move to London in June 2002. However, in January 2002, effective March 2002, Knight's employment was terminated in connection with a reorganization of BAS. BAS denied that it promised Knight to pay him $1.6 million in incentive compensation for 2000, but instead advised him that his compensation would be $600,000.
Knight commenced an arbitration against BAS before the NASD as arbitrator, on May 29, 2002, asserting that BAS failed to pay him the full amount for his year-end discretionary incentive compensation that was due to him. Knight also sought claim damages against BAS for breach of contract, promissory estoppel, quantum meruit, and attorneys' fees, seeking $1 million in compensation. BAS denied all liability for the $1 million and counterclaimed for $9,014.21, on the basis of unjust enrichment seeking to recover the value of two payroll checks that it claimed were {**4 Misc 3d at 758}mistakenly issued to Knight following the termination of his employment. Knight has conceded during the arbitration the counterclaim of the $9,014.21 was valid.
The hearings were held on September 8, 9 and 10, 2003 before the NASD Arbitration Panel. Knight testified on his own behalf and two employees testified for BAS. In its award, the panel awarded Knight $680,000 and dismissed the counterclaim and all other requests for relief sought by either party. The award set forth the causes of action claimed by each party and the relief requested, but set forth no reasoning or the underlying basis or the grounds for the award.
BAS now seeks to set aside and vacate the award. Knight opposes vacatur on the ground that there is no basis in law to overturn the decision of the arbitration panel.
Although BAS claims that the arbitrators exceeded their powers, they did not, at least with respect to Knight's claim. They were asked to determine the validity of his claim and they did within the parameters set forth by the parties. Exceeding powers relates to cases where the arbitrators decided matters not submitted to them or awarded more than was sought. Certainly, the award on Knight's claim was within the parameters of the submission.
"Manifest disregard of the law"[FN1]

and "irrational" are objections to arbitrator's awards often interposed by losing parties to arbitrations. Before considering these claims it is necessary to determine the source of review powers of this court, which are apparently different under federal and New York law. Federal law provisions governing arbitration are found in the Federal Arbitration Act (9 USC § 1 et seq.) (FAA). The FAA applies to arbitrations involving interstate and foreign commerce, such as those between citizens of different states or between citizens of the United States and a foreign country.
In this case, the record is unclear whether this arbitration falls within such jurisdictional requirements. While there seems little dispute that Knight is a citizen of New York State, the citizenship of BAS is never stated. While BAS is said to have its "principal place of business in North Carolina," it also has offices in New York. (BAS petition ¶ 2.) Whether BAS, a limited liability{**4 Misc 3d at 759} company, is a North Carolina, New York, or even a Delaware LLC is not disclosed by the record.
However, the New York Court of Appeals in Matter of Salvano v Merrill Lynch, Pierce, Fenner & Smith (85 NY2d 173 [1995]) has held that "[u]nder settled law, the arbitration of disputes concerning employment in the securities industries and the enforceability of the arbitration clause" are governed by the FAA. At issue here is not, however, whether the arbitration clause is enforceable (which it is equally under both New York and federal law) but whether, now that the arbitration has been held, this court must adopt a federal standard of review of the award, rather than applying the New York standard.
Because this court finds there may be differences in the scope of the permissible review of an arbitration award under New York and federal law, this fact may be important. Under certain federal decisions, an arbitration may be reviewed to determine whether it was made in "manifest disregard" of law. (Halligan v Piper Jaffray, Inc., 148 F3d 197 [2d Cir 1998].) The New York Court of Appeals has, however, not recognized such grounds and has expressly stated that 
"[u]nder CPLR 7511, an award may be vacated only if (1) the rights of a party were prejudiced by corruption, fraud or misconduct in procuring the award, or by the partiality of the arbitrator; (2) the arbitrator exceeded his or her power or failed to make a final and definite award; or (3) the arbitration suffered from an unwaived procedural defect." (Hackett v Milbank, Tweed, Hadley & McCloy, 86 NY2d 146, 154-155 [1995] [emphasis added].)
Even where the arbitrator makes a [*2]mistake of fact or law, or disregards the plain words of the parties' agreement, the award is not subject to vacatur "unless the court concludes that it is totally irrational or violative of a strong public policy" and thus in excess of the arbitrator's powers. (Hackett v Milbank, Tweed, Hadley & McCloy, 86 NY2d at 155; see also Maross Constr. v Central N.Y. Regional Transp. Auth., 66 NY2d 341, 346 [1985]; Matter of Silverman [Benmor Coats], 61 NY2d 299, 308 [1984]; Matter of Sprinzen [Nomberg], 46 NY2d 623, 631 [1979]; Garrity v Lyle Stuart, Inc., 40 NY2d 354, 357 [1976].) Thus, although the New York Court of Appeals recognizes "irrationality" as a nonstatutory ground for setting aside an arbitral award under New York law, it does not recognize any independent "manifest disregard" ground. As recently as November 20, 2003, the Court of Appeals reiterated this principal in United Fedn. of Teachers {**4 Misc 3d at 760}v Board of Educ. (1 NY3d 72 [2003]). In that case, the Court considered public policy grounds for the vacation of an arbitration award, and found such grounds not present in the case. In the course of its decision, however, the Court, in listing the grounds for vacation of a New York arbitration award, again included "irrationality," but not "manifest disregard" of law.
Even in Salvano (supra at 180), the Court of Appeals, after having found that the FAA applied because the arbitration was a dispute "concerning employment in the securities industry and the enforceability of the arbitration clause embodied in petitioners' U-4 Form applications," went on to limit the grounds for its review of the award to those expressly set forth in CPLR article 75.
Several Supreme Court and Appellate Division cases, however, some of which are cited by BAS, seem to support New York's recognition of "manifest disregard" as a basis for the vacation of an arbitral award. The most recent of these cases are: Sawtelle v Waddell & Reed (304 AD2d 103 [1st Dept 2003]), Cohen v Ark Asset Holdings (302 AD2d 209 [1st Dept 2003]), Matter of Bart v Miller (302 AD2d 379 [2d Dept 2003]), Matter of UBS Warburg (Auerbach, Pollack & Richardson) (294 AD2d 245 [1st Dept 2002]), Matter of Spear Leeds & Kellogg v Bullseye Sec. (291 AD2d 255 [1st Dept 2002]), Matter of Stewart Tabori & Chang (Stewart (282 AD2d 385 [1st Dept 2001]), and Layne Constr. v Stratton Oakmont (228 AD2d 45 [1st Dept 1996]).
Sawtelle (supra), the most recent First Department case cited by BAS, involved an arbitration of a dispute concerning employment in the securities industry. Although the First Department stated that such case was to be decided under the FAA, following Salvano, the Appellate Division's reference to the FAA was also clearly required because the parties were citizens of different states, in which case, the FAA by its terms, expressly applies. The Sawtelle decision (at 107), however, went further and stated that as the Court of Appeals has held, "the arbitration of disputes concerning employment in the securities industry . . . [is] governed by the Federal Arbitration Act (Matter of Salvano v Merrill Lynch, Pierce, Fenner & Smith, 85 NY2d 173, 180), judicial review of this award is governed by the FAA (9 USC § 1 et seq.)" (internal quotation marks omitted). This court finds no support in Salvano (supra) for such conclusion. In Sawtelle, the Appellate Division, following two Federal Second Circuit cases, found that the rules of the FAA, including the federal rule of "manifest disregard" were applicable to the case, and vacated the {**4 Misc 3d at 761}award of punitive damages on such grounds "as a separate basis for vacating the award." (Id. at 113.)
The remainder of the Appellate Division cases where the concept of manifest disregard is discussed are memorandum or short decisions not particularly enlightening on the issue. In fact, the most recent decision, Cohen v Ark Asset Holdings (supra), a memorandum decision, even cites [*3]Hackett in upholding a Supreme Court ruling which determined "correctly, that the arbitrator's award was not irrational, contrary to public policy, or in manifest disregard of the law." (Id. at 210.) Yet Hackett never even mentions "manifest disregard" or any equivalent locution.
In Spear, Leeds & Kellogg v Bullseye Sec. (supra), the First Department, in a memorandum decision, affirmed the vacation of an arbitral award by the Supreme Court on three grounds: (1) that the arbitration panel exceeded its authority, (2) that the award was irrational, and (3) that there was a manifest disregard of law. The first two grounds are well recognized in New York law. For the third ground, the First Department again cited Halligan (supra) and Matter of Heifetz (227 AD2d 623 [2d Dept 1996], lv denied 88 NY2d 815 [1996]), which is also cited for the proposition that an "arbitration award may not be vacated unless it is totally irrational." (291 AD2d at 256.) Because the affirmance was based on three independent grounds, the finding that a manifest disregard theory exists in New York was unnecessary for the decision.
In Stewart Tabori & Chang (Stewart) (supra), the First Department referred to the concept of manifest disregard twice, first to confirm a portion of the award (which it found not to constitute a "manifest disregard") and to set aside a portion of an award for attorney's fees as "not authorized by the parties' agreement . . . or by any statute or court rule, contrary to New York law . . . which the parties had expressly chosen to govern their agreements," as being in manifest disregard of the law, citing only a federal case for this proposition. (Id. at 386.)
In Bart v Miller (supra at 380), the Second Department upheld a finding of the Supreme Court, Nassau County, that an "arbitrator's award was not made in manifest disregard of the law or the facts," citing Credit Suisse First Boston Corp. v Crisanti (289 AD2d 83 [1st Dept 2001]) and a federal case. No further discussion was included, and as this case did not support a "manifest disregard" standard, but in effect found that there was none, it was no more than dictum.{**4 Misc 3d at 762}
In Layne Constr. (supra), the First Department reversed a Supreme Court, New York County, vacation of a Nevada arbitration award, which had awarded punitive damages. The Appellate Division, in rendering its decision, principally discussed the impact of a New York choice of law clause in the agreement. In doing so, it followed a United States Supreme Court case (Mastrobuono v Shearson Lehman Hutton, Inc., 514 US 52 [1995]), which had allowed an award of punitive damages by arbitrators in Illinois applying New York law. At the end of the case, the Appellate Division, quoting a federal case (Folkways Music Publs., Inc. v Weiss, 989 F2d 108 [2d Cir 1993]), stated that "[c]ourts may vacate [arbitration] awards only for an overt disregard of the law and not merely for an erroneous interpretation." (228 AD2d at 51.) (Note that federal courts treat "overt" and "manifest" disregard as the same thing.) Again this statement is dictum as the Appellate Division upheld the award.
The remaining recent decision this court has found discussing manifest disregard is UBS Warburg (Auerbach & Richardson) (supra). In this case, the New York County Supreme Court set aside an award for a series of reasons, including public policy, irrationality and exceeding the scope of the arbitrators' authority (all clearly recognized in New York law) (2001 NY Slip Op 50017[U] [Sup Ct, NY County, Oct. 2, 2001]). The reference to manifest disregard was not to law, but to a "well-established public policy" (id. at *6). This reference begs the issue, as all law, whether written in statute or imposed by decision, is itself a manifestation of public policy. It is interesting to note that the lower court cited Hackett with approval.
[*4]This court, after reviewing these cases, has concluded that the rule set forth by the Court of Appeals in Hackett (supra), Salvano (supra) and United Fedn. of Teachers (supra) is the governing New York law and that to the extent these Court of Appeals decisions seem not to have been followed by certain lower court cases as dismissed above, this court is not bound by such cases. Accordingly, this court finds that there is no independent "manifest disregard" or equivalent New York standard as a basis for a New York court acting under New York law to set aside an arbitration award.[FN2]
Next to be considered is whether the FAA, when applicable to an arbitration, mandates, notwithstanding New York Court of Appeals {**4 Misc 3d at 763}decisions to the contrary, that New York courts follow the federal doctrine of "manifest disregard" which is applied by federal courts in reviewing arbitration awards under the FAA. In Salvano (supra), the Court of Appeals, while acknowledging the applicability of the FAA, stated:
"The recognized statutory grounds for vacatur include setting aside an award procured by corruption . . . on the part of the arbitrators; misconduct or misbehavior by the arbitrators, by which the rights of a party were prejudiced; and action by the arbitrators in excess, or imperfect execution, of their powers (see, CPLR 7511; 9 USC § 10 [d]). Not even an error of law on the part of the arbitrators will suffice without a showing of one of these statutory grounds for vacatur." (Salvano, supra at 183.)
Notwithstanding such statement, the First Department, in Sawtelle (supra, citing Salvano, supra), found the FAA equally applicable to the review of an arbitration award, including the federal court created doctrine of manifest disregard.
When the purpose of the FAA is considered, the distinction made between "applicability" and the "scope of review" in Salvano (supra) becomes clear. The purpose of the FAA was to sweep away objections and hostility to the arbitration of disputes. "[T]he Act's goal was to put arbitration on a par with other contracts and eliminate any vestige of old rules disfavoring arbitration." (Stone v Doerge, 328 F3d 343, 345 [7th Cir 2003, Easterbrook, J.].)[FN3]
Section 2 of the FAA is a rule of substantive law validating written agreements to arbitrate and making them enforceable, except "upon such grounds as exist at law or in equity for the revocation of any contract." As the FAA was applicable to a "{**4 Misc 3d at 764}maritime transaction . . . or[*5] a transaction involving" interstate or foreign commerce, the FAA was within the constitutional powers of the federal government. Article 75 of the CPLR, by providing for the enforcement of arbitration agreements, effectively covers in the same way what the FAA does not cover in New York.
To enforce the FAA, section 4 of the FAA also authorizes United State District Courts to compel arbitration where written arbitration agreements exist. To prevent a party bound by an arbitration agreement covered by the FAA from circumventing such agreement by litigating, FAA § 3 requires "any of the courts of the United States" to stay any action where the issue would be properly referable to arbitration. In sections 10 and 11, the FAA provides standards for the vacation, modification or correction of an arbitration award. Unlike section 2, which sets forth a rule of federal substantive law, section 3 is expressly limited to "any court of the United States" and sections 4, 10 and 11 are expressly limited to the "United States court[s] in and for the district wherein the award was made." Thus, the FAA, by its terms, does not purport to create rules for state courts for the review of an arbitration award, even if the agreement to arbitrate was subject to the FAA. Thus, there is no express provision in the FAA which would supercede this court's reference to article 75, rather than to the FAA, for a source of rules pursuant to which it is to consider an application to set aside or modify an arbitration award; the FAA contemplates the independent rule of the state courts, so long as they recognize the substantive thrust of the FAA—to enforce written arbitration agreements in interstate and foreign commerce and in admiralty.
Although the standards for setting aside or modifying an arbitration award under both article 75 and the FAA are roughly similar, albeit expressed in somewhat different words, neither expressly provide for the vacation or modification of an award either for "manifest disregard of law" or for "irrationality."
While an action by a state court which ignores the substantive provisions of section 2 of the FAA, by setting aside an award, as a matter of state law, in an arbitration subject to the FAA on the grounds that the agreement to arbitrate was unenforceable under state law, although enforceable under the FAA, could eventually be reversed by the Supreme Court under the federal Supremacy Clause, no similar result should obtain where a state court had fully enforced an arbitration agreement by {**4 Misc 3d at 765}refusing to interpose a federal court created doctrine permitting a federal court not to enforce the outcome of the arbitration.
Accordingly, this court, following the New York Court of Appeals, finds that BAS's claims that the arbitrators' acts were in manifest disregard of the law, is not cognizable or a basis for setting aside the award to Knight.
In any event, even if this court were to have applied the "manifest disregard" rule, the same outcome would obtain in this case.
Recognizing that arbitrators are not necessarily lawyers, the courts have long held that an error in law is not an adequate ground for vacation of an arbitration award. The development of the doctrine of manifest disregard recognizes that "manifest disregard" implies far more than "error." Failing to make such distinction would subject every arbitration to full appellate review on every issue and negate the entire policy behind the FAA and state policies to encourage arbitration as an alternative dispute resolution mechanism. It flows from this that for there to be a manifest disregard, the arbitrators must first know of the law and then refuse to apply it or ignore it altogether. Further, the law they are disregarding must be well defined, explicit and clearly applicable to the case. (See [*6]Sawtelle, supra; Halligan, supra.) As a practical matter, manifest disregard should also be of a law or principle uncontested by the parties, as any other rule would wholly be unworkable where arbitrators who may not be lawyers are also permitted to make errors of law. Here, the principal contention of BAS is that its view of the contractual rights of the parties prevails, that because Knight's bonus was discretionary, it could be withheld or modified for no reason or any reason. Knight's position is that while the bonus was discretionary, BAS could not, under its policies and procedures, exercise the discretion in an arbitrary and capricious manner. Thus, to the extent this dispute involved the meaning of a contract as to the amount of compensation due to Knight for the year before he was terminated, the record shows no "clear and undisputed law" applicable submitted to the arbitrators on this issue. Although earlier arbitration results have been cited by BAS in support of their position what such contract means, it is hornbook law that arbitration decisions are not determinations of law and have no precedential value. Thus, even if the manifest disregard standard was to apply, the award in favor of Knight cannot be shown to have been made in manifest {**4 Misc 3d at 766}disregard of law as such a doctrine has been explicated by the federal courts.
Turning to BAS's claim of "irrationality," the court finds none in the award to Knight on his claim. While the term "irrationality" is oft bandied about in arbitration decisions and finds its way, almost inexorably, as the last of the losing litigator's long litany of laments in actions to vacate an arbitration award, there is precious little precedent to delineate in this context what "irrational" means.[FN4]
While the Court of Appeals has allowed "irrationality" as a valid nonstatutory basis for the vacation of an arbitration award, they have never defined such term. This court has been unable to find a clear statement in a case as to what is to constitute irrationality, in fact, in an arbitration context; the parties hereto have not proffered (nor has the court independently found) an award having been set aside solely on the ground that it was indeed irrational. In any event, the award is not irrational within almost any definition of such term. Accordingly, this court will not set aside the award on such basis.
For irrationality to be found, perhaps a court should know it when it sees it. (See, e.g., Jacobellis v Ohio, 378 US 184 [1964] [Stewart J., concurring].)[FN5]

It is, at least, the opposite of rational. In this case, Knight's counsel suggested to the panel a methodology as to how [*7]to award virtually[FN6]

the same amount they awarded. Whether the panel was correct or not in adopting his suggestion, they were certainly rational in fixing the amount based upon his argument. Accordingly, this court finds their award was not irrational.{**4 Misc 3d at 767}
BAS also claims that the lack of written rationale in the decision constitutes evidence that the panel acted irrationally and exceeded its authority. BAS has cited a federal case, Halligan (supra), in support of such assertion. This court has found no New York case to support any basis for this court to grant any such relief. While in Halligan (supra), the Second Circuit considered the lack of a written opinion as a factor in considering whether or not there had been a "manifest disregard" of law, the Second Circuit made it clear that it was "not holding that arbitrators should write opinions in every case or even in most cases." (Id. at 204.) NASD rules do not require that arbitrators prepare a written opinion; they may submit their award in summary form. Although the same rule applies to arbitrations before the AAA, other arbitration regimes do require a written opinion. (See, e.g. Rules of Conciliation and Arbitration of International Chamber of Commerce.)
As an arbitration is based on the parties' agreement to provide an alternate to the courts for resolving their disputes, nothing prevented the parties from requiring their arbitrators to provide a written explication of their award, and they could have done so in their arbitration agreement, or even later, when the dispute was submitted to arbitration. But the parties here did not do so. However, there is no free lunch. Requiring a written explication as a general rule or permitting a party to apply to a court to require such an explication in a specific case would add additional costs and delays to resolving disputes, and perhaps shift back to the court many disputes now arbitrated as the cost advantage of arbitration would be diminished, making it less attractive to those considering arbitration when they balance the merits and demerits of arbitration and litigation.
The dismissal of the counterclaim by the panel is another matter entirely. By the close of arbitration, Knight's counsel (whose statements bind Knight) had conceded the validity of the counterclaim. To this extent, there was no longer a controversy over such claim and accordingly, the decision of the arbitrators to disallow it was beyond the scope of their powers. As arbitration is a voluntary matter, the parties have effectually agreed that the counterclaim was owing; the arbitrators' action not to recognize this unequivocal agreement was beyond their powers.
BAS's petition to vacate the award is denied, and its petition to vacate the denial of the counterclaim is granted.

Footnotes

Footnote 1: Manifest disregard of law "implies that the arbitrator appreciates the existence of a clearly governing legal principal but decides to ignore or pay no attention to it." (Merrill Lynch, Pierce, Fenner & Smith, Inc. v Bobker, 808 F2d 930, 933 [2d Cir 1986].)


Footnote 2: In its most recent opinion, the First Department seems in full accord with this result. In Matter of Brown & Williamson Tobacco Corp. v Chesley (7 AD2d 368, 372 [1st Dept 2004]), the First Department stated: "an award will not be vacated . . . unless it is violative of a strong public policy, or is totally irrational, or exceeds a specifically enumerated limitation on his power" quoting Matter of Silverman, supra at 308; citing United Fedn. of Teachers, supra). The Court (at 372) also stated that "as long as arbitrators act within their jurisdiction, their awards will not be set aside because they have erred in judgment either upon the facts or the law." (Id.) The First Department, however, in such case, did not expressly address the "manifest disregard" issue or its earlier decisions which are claimed to support such ground for the vacation of an arbitral award.


Footnote 3: Many states had refused to enforce arbitration clauses on various grounds. Note that as between Sawtelle (supra) and Stone (supra), the former was decided before the latter, and the latter, being a decision of a federal appeals court, is more persuasive as to the impact of the act, a federal law, than Sawtelle (supra), a decision of a state appeals court.


Footnote 4: In Sawtelle (supra), the Appellate Division discussed irrationality, but did not define it, or in the end, apply a test. Similarly, the Appellate Division in Spears, Leeds & Kellogg (supra) did apply a test, but without definition, and only as one of three alternate grounds of declining to enforce the award. It should be noted that both Sawtelle and Spear were cases involving punitive damages awarded by the arbitrator, an issue which is probably best dealt with as a matter of whether the court should enforce the award of punitive damages as a separate arbitral remedy as a matter of public policy, a power which courts have always reserved.


Footnote 5: Justice Stewart, after discussing the definition of obscenity under federal cases, stated: "I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it, and the motion picture involved in this case is not that." (Jacobellis, 378 US at 197.)


Footnote 6: His suggestion was for $671,000, taking into account approximately the $9,000 counterclaim, which he had conceded.