OPINION OF THE COURT
Dianne T. Renwick, J.
In this tax lien foreclosure action, the third-party purchaser at the foreclosure sale (i.e., successful bidder) moves by order to show cause to compel the referee to transfer the deed without charging the successful bidder any post-sale interest or property taxes that have accrued during the inordinate delay (eight years) in closing on the foreclosed property. Plaintiff cross-moves for a court order compelling the referee to vacate the foreclosure sale in the event the successful bidder refuses to pay such post-sale charges.
Factual Background
In 1998, NYCTL 1996-1 Trust, the beneficial owner of a real property tax lien, and the Bank of New York, the holder of the tax lien as collateral agent for payment of the bond issued by the beneficial owner, commenced this action seeking to foreclose upon a tax lien on a commercial property — an abandoned CITGO gas station located at 250 Jackson Avenue, Bronx, New York. The judgment of foreclosure and sale, dated July 21, 1998, appointed a referee to sell the property and listed a tax lien in the amount of $113,551.01. Both the judgment and the terms of sale directed the referee to pay the unpaid taxes and assessments from the proceeds of the sale.
The foreclosure sale took place on June 8, 1999 when Joseph Stern, the successful bidder, bought the foreclosure property for *242 $176,670. Nevertheless, more than eight years transpired, from the time the foreclosure sale took place (June 1999), until the making of the instant motion (October 2007) to compel the referee to transfer the deed to the successful bidder. After the auction sale, the successful bidder failed to demand a closing when his title insurance company refused to insure the property until it was free of any current or future liens regarding the environmental cleanup to be undertaken on the property by New York State Department of Environmental Conservation. Subsequently, the cleanup conducted by the Department took place over a period of several years, at a cost of over a million dollars.
The referee appointed to conduct the foreclosure sale reports that, as soon as she learned about the oil contamination, she offered to return the deposit to the successful bidder as a matter of fairness; the oil spill contamination had not been disclosed to any of the parties at or prior to the public auction. Rather than accept such offer, the successful bidder elected to pursue a settlement with the Department of Environmental Conservation for the eventual cost of the cleanup of the oil contamination. Recently, upon reaching a tentative settlement with New York State, the successful bidder attempted to schedule a closing with the referee and the beneficial owner of the tax lien, NYCTL 1996-1 Trust. The closing has not taken place, however, because the parties have been unable to resolve the following two issues: (1) who should pay the property taxes that have accrued subsequent to the auction sale, but prior to the delivery of the deed; and (2) whether the purchaser should pay any interest on the purchase price from the date of the auction sale until the date of the delivery of the deed.
Discussion
A.
The court first examines which party bears the responsibility of payment of the additional property taxes and assessments placed on the property subsequent to the auction sale but prior to the transfer of the deed. Any analysis on this issue must begin with Real Property Actions and Proceedings Law § 1354, which generally governs the distribution of the proceeds of a foreclosure sale. RPAPL 1354 (1) provides that, unless otherwise directed, the officer conducting the sale, usually the appointed referee, must pay the expenses of the sale out of the *243 proceeds, then pay plaintiff or plaintiffs attorney the amount of the debt with interest and costs.
RPAPL 1354 (2) requires that the officer pay from the proceeds all unpaid property taxes, assessment and water rates which have accrued as liens upon the property sold. Such payments are deemed expenses of the sale and have priority over any mortgage or other tax lien from which the judgment of foreclosure and sale emanates. (RPAPL 1354 [2].) Thus, such payments should be made before any payments are made to the plaintiff for either the debt or interest or costs. (Id.; see also Board of Mgrs. of 235 E. 22nd St. Condominium v Lavy Corp., 233 AD2d 158 [1st Dept 1996].)
Here, the parties agree that RPAPL 1354 (2) controls the issue at hand, but disagree as to the statute’s implications. Plaintiff, the holder of the tax lien upon which the property was foreclosed, avers that RPAPL 1354 (2), which requires payment of taxes from the proceeds of sale, does not extend beyond the date of the auction sale. Conversely, the successful bidder-purchaser asserts that RPAPL 1354 (2) mandates that the additional property tax and assessment placed on the property subsequent to the auction but prior to the transfer of the referee’s deed (closing) must be paid out of the proceeds of the sale. In support of his interpretation of RPAPL 1354 (2), the successful bidder-purchaser relies upon Bank of N.Y. v Love (3 AD3d 303 [1st Dept 2004]).
This court, however, finds that Bank of N.Y. v Love (supra) does not support the successful bidder’s broad interpretation of the scope of RPAPL 1354 (2). Contrary to the successful bidder-purchaser’s allegations, Bank of N.Y. v Love (supra) did not address the same legal issue raised herein as to which party bears responsibility for the taxes that may have accrued between the auction and the delivery of the deed, because in that case there was, presumably, no delay involved during such time period. Instead, the dispute arose from a conflict, absent in this case, between the terms of sale and the judgment of foreclosure and sale with regard to the payments of taxes outstanding at the time of the judgment of foreclosure and sale. Specifically, the judgment of foreclosure directed that the property be sold by a referee, who was to pay the unpaid taxes and assessments from the proceeds of the sale. The notice of sale indicated that the premises would be sold “subject to the provisions of the filed judgment” that all unpaid taxes and assessments were to be paid by the purchaser prior to the closing date.
*244 At the closing, the bank demanded that the purchaser pay approximately $6,600 in outstanding taxes. However, the purchaser objected, contending that, under RPAPL 1354 (2), taxes must be paid from the proceeds of the sale, and that the terms of sale are invalid to the extent that such term contravenes the statute. When, the closing did not occur, the purchaser moved by order to show cause for an order compelling the referee to close on the sale without requiring the payment of taxes by the purchasers. The IAS court concluded that the purchasers were obligated to satisfy the condition in the terms of sale regarding payment of taxes, notwithstanding the language in the judgment indicating otherwise. The appellate court, however, reversed, holding that where the judgment requires the referee to pay real estate taxes out of the proceeds of sale, in compliance with RPAPL 1354 (2), the referee must pay the taxes, even if the terms of sale purport to oblige the bidder to pay those taxes. Thus, Bank of N.Y. v Love (supra) has no bearing on the issue before this court, where there is no conflict between the judgment and the terms of sale with regard to the payment of the prejudgment property taxes.
Although there does not appear to be a case which addresses the dispute herein, analysis leads to the ineluctable conclusion that the successful bidder at the auction sale should bear the burden of the payment of taxes and assessments that have accrued during the prolonged period of delay after the auction sale and before the referee’s deed. Indeed, during that period, the successful bidder is the equitable owner of the premises that was the subject to the foreclosure. (Hepworth v Manetto Holding Corp., 262 App Div 877 [2d Dept 1941]; Matter of Braico, 235 App Div 132 [2d Dept 1932], affd 260 NY 625 [1932]; Woodside Sav & Loan Assn. v Banks, 36 Misc 2d 954 [1962].) Moreover, courts have consistently interpreted the word “sale,” in reference to a provision in the judgment, and terms of sale (that all taxes, assessments and water rates, which, at the time of sale are liens, will be taken out of the purchase money) as referring to the auction sale, and not to the delivery of the deed. (See Board of Mgrs. of 235 E. 22nd St. Condominium v Lavy Corp., supra; Wagner v White, 225 App Div 227 [1st Dept 1929]; Keller v Quad Realty Corp., 24 Misc 2d 1051 [Sup Ct, NY County I960].)
Significantly, this court’s narrow interpretation of RPAPL 1354 (2) — as mandating the referee to pay only those real estate taxes that have accrued prior to the bidding at the foreclosure *245 sale — is consistent with the purpose of the statute. RPAPL 1354 (2) purports to protect a purchaser at a foreclosure sale. Specifically, prior to the most recent amendments to RPAPL 1354, there was controversy over which taxes were required to be paid by a referee prior to distribution of the net proceeds to the plaintiff at a foreclosure action. (See e.g. Fleet Fin. v Gillerson, 277 AD2d 279 [2d Dept 2000].) Under such an uncertain legal scenario, prospective bidders may have been reluctant to bid at a prospective sale, not knowing the amount of tax for which they would remain liable, in addition to the bid amount. (Bank of N.Y. v Love, supra.) Such uncertainty has been clarified by RPAPL 1354 (2), which trumps a judgment of sale or terms of sale that fails to require a referee to pay taxes as an expense of the sale. Thus, interpreting the mandate of RPAPL 1354 (2) to apply up to the auction sale, rather than the deed transfer, in no way re-creates any uncertainty removed by the statute.
B.
This court next examines whether plaintiff should be entitled to collect interest for the extraordinary postjudgment delay. CPLR 5001 (a) provides that in an equitable action, which includes mortgage foreclosures, “interest and the rate and date from which it shall be computed shall be in the court’s discretion.” Case law concurs and adds the qualification that resolution of the interest question is dependent upon the facts of each case, including the wrongful conduct of any party. (See e.g. Danielowich v PBL Dev., 292 AD2d 414 [2d Dept 2002]; Bank of New York v Spiro, 267 AD2d 339 [2d Dept 1999]; Grossman v Pendant Realty Corp., 221 AD2d 240 [1st Dept 1996]; Sloane v Gape, 216 AD2d 285 [2d Dept 1995]; South Shore Fed. Sav. & Loan Assn. v Shore Club Holding Corp., 54 AD2d 978 [2d Dept 1976]; Bosco v Alicino, 37 AD2d 552 [1st Dept 1971].)
Accordingly, post-auction sale delays attributable solely to the plaintiff can be a basis to deny an award of interest on the judgment. (See ERHAL Holding Corp. v Rusin, 252 AD2d 473 [2d Dept 1998].) That is, because postjudgment interest is a penalty for delayed payment of that judgment, defendants should not suffer the penalty of paying interest when the delay was occasioned by the plaintiff. (Id., citing Juracka v Ferrara, 120 AD2d 822, 824 [3d Dept 1986].) Conversely, if the purchaser is responsible, then interest and additional charges should be added to the balance of the purchase price due after the down payment was made. (South Shore Fed. Sav. & Loan Assn. v Shore Club Holding Corp., supra.)
*246 Here, it cannot be seriously argued that plaintiff engaged in any kind of intentional conduct for the purpose of inflating the debt. Instead, as the successful bidder concedes, the delay was triggered by the discovery of the petroleum spill on the premises found by the purchaser, after the bid at the foreclosure sale. That plaintiff and the referee may have acquiesced in the long delay is not legally significant and does not vitiate the fact that the long delay was for the benefit of the successful bidder. Obviously, the successful bidder was reluctant to close due to the uncertain cost of the remediation of the oil contamination.
Significantly, upon learning of the contamination, the referee offered the successful bidder the down payment as a matter of fairness because, presumably, none of the parties had been put on notice of the environmental problems in the property.* However, the successful bidder never pursued such relief. Instead, he pursued a settlement of the remediation cost with the State of New York, presumably to reap the benefits of the vertiginous appreciation of property values that has occurred during the last decade. Under the circumstances, it would be unconscionable to hold plaintiff responsible for the prolonged delay in the deed transfer. Thus, this court exercises its discretion in refusing to curtail the interest that has accrued from the date of the foreclosure sale until the delivery of the deed. However, since the prolonged delay has not been exclusively the fault of the successful bidder-purchaser, the interest shall be computed at a rate of five percent as mitigation for any delay unrelated to the oil spill remediation.
Conclusion
For the foregoing reasons, it is hereby ordered that the motion by the successful bidder-purchaser, seeking to compel the referee to transfer the deed without charging the successful bidder any post-sale interest or property taxes that have accrued during the inordinate delay (eight years) in closing on the foreclosed property, is denied; it is further ordered that plaintiffs cross motion, seeking a court order compelling the referee to vacate the foreclosure sale in the event the successful bidder refuses to pay such post-sale charges, is granted.

 This court questions whether a foreclosure sale would be subject to vacatur based upon the mere existence of environmental problems (see John Hancock Mut. Life Ins. Co. v 491-499 Seventh Ave. Assoc., 169 Misc 2d 493 [Sup Ct, NY County 1996] [discussing cases and concepts on both sides of the issue]).