(December 16, 2008)

 NYCTL 1996-1 TRUST, and THE BANK OF NEW YORK, as Collateral Agent and Custodian for the NYCTL 1996-1 Trust, Respondents, v EM-ESS PETROLEUM CORP. et al., Defendants, and JOSEPH STERN, Appellant. [869 NYS2d 71]—

Stern purchased an abandoned gas station at a foreclosure sale on June 8, 1999. He subsequently learned that the New York State Department of Environmental Conservation (DEC) had designated the property an "oil spill site" and that, although DEC had expended approximately $1.5 million in cleanup costs, substantial cleanup remained to be completed. Stern's title insurance company refused to insure the property until it was free of any current or future liens or obligations associated with the cleanup. The Referee who conducted the auction offered to return Stern's deposit, because the oil contamination had not been disclosed at or before the auction. Stern elected instead, however, to pursue a settlement with DEC for the eventual cost of the cleanup. The cleanup proceeded over the course of several years, and in 2007, a closing was tentatively scheduled. It was not held, however, because the parties could not resolve their dispute as to whether Stern was required to pay the property taxes and interest on the purchase price accrued between the date of the auction and the date of delivery of the deed (April 9, 2008). Stern then brought the instant motion.

Real Property Actions and Proceedings Law § 1354 (2) provides that "[t]he officer conducting the sale shall pay out of the proceeds all taxes, assessments, and water rates which are liens upon the property sold." Contrary to Stern's contention, the word "sale" in the statute refers to the auction sale, not to the delivery of the deed; hence, Stern, the purchaser, is required to pay the taxes that became liens on the property after the auction (*Wagner v White*, 225 App Div 227 [1929]).

The Referee's terms of sale recited the payment of 10% of the purchase price at the time of Stern's bid with the balance to be paid on July 8, 1999 "when the Referee's deed will be ready for delivery" at the Referee's office. Therefore, it is beyond cavil that July 8, 1999, the date on which the deed was to have been delivered, was the closing date. Under the terms of sale, the Referee reserved the right to unilaterally conduct another foreclosure sale upon Stern's failure to comply with any of the terms of sale, including the closing date. The terms of sale also provided for Stern's payment of interest on the entire purchase price in the event of his failure to close the deal on the date specified "unless the Referee shall deem it proper to extend the time for the completion of said purchase." As noted above, the closing was postponed because Stern was not ready to close on the date specified. Stern contends that the Referee waived the payment of interest by acquiescing in his request for an adjournment of the closing pending completion of the environmental cleanup.

A referee's terms of sale which comports with a judgment of foreclosure is treated as a contract (cf. Crisona v Macaluso, 33 AD2d 569 [1969]). Hence, upon Stern's failure to close on July 8, 1999, the Referee had the option to cancel the transaction and conduct another sale or grant an adjournment subject to Stern's payment of interest. As Stern would have it, the Referee waived interest and deemed it proper to extend the closing date, within the meaning of the contract, simply by granting his request for an adjournment. As a practical matter, a sales transaction cannot be adjourned without the consent of both the buyer and the seller. Nevertheless, under Stern's interpretation, interest would have been waived whether the closing was adjourned at his instance or that of the Referee. Such a construction would render the interest provision meaningless because it could not be invoked in either event. Contracts should be construed to give force and effect to their provisions and not in a manner so as to render them meaningless (Yoi-Lee Realty Corp. v 177th St. Realty Assoc., 208 AD2d 185, 190 [1995]). Under a proper construction, interest would be waived where the closing is adjourned at the Referee's instance. CPLR 5001 (a), the provision cited by the motion court, is inapplicable because the instant dispute does not involve a sum of money awarded upon a judgment. We will not, however, disturb the five percent rate of interest fixed by the court considering that Stern and plaintiff's counsel agreed to an even higher rate of interest by letters dated September 25 and October 9, 2007. Concur—Lippman, P.J., Mazzarelli, Buckley and DeGrasse, JJ.

McGuire, J., dissents in part as follows: I agree with the ma-

jority that Supreme Court correctly concluded that Stern, the successful bidder at the auction, is responsible for taxes that were assessed on the property after the auction but before the closing. I disagree, however, that we should affirm that aspect of Supreme Court's order that, in effect, directed Stern to pay interest on the amount of his bid for the period between the auction and the closing. Rather, I would modify the order to the extent of remanding the matter to Supreme Court for a hearing on the issue of whether Stern should pay interest and, if so, the amount of that interest.

Stern purchased a tract of land at an auction held on June 8, 1999. The tract was sold by a Referee pursuant to a judgment of tax foreclosure and sale. Stern and the Referee entered into a memorandum of sale on the date of the auction that stated the terms of sale. One of the terms is that "[t]he Referee is not required to send any notice to the purchaser; if purchaser neglects to call at the time and place . . . specified to receive his deed, he will be charged with interest thereafter on the whole amount of his purchase, *unless the Referee shall deem it proper to extend the time for the completion of said purchase*" (emphasis added).

Following the auction, Stern learned that the State had undertaken environmental remediation efforts on the tract; a gas station had previously operated there and the soil was contaminated with petroleum. According to Stern, he wanted to wait to close on the property until the State both had completed its remediation efforts and determined whether to seek reimbursement from him for all or part of the costs of the cleanup. Apparently, one of Stern's primary concerns was that he could not obtain title insurance against liabilities associated with the environmental cleanup efforts until those efforts were complete. Stern's claim that he wanted to forestall the closing for these reasons is corroborated by a June 16, 2005 letter by the former counsel to plaintiff, the company prosecuting the tax foreclosure action. In the letter, counsel stated that he had informed plaintiff and the Referee of Stern's concerns regarding the cleanup efforts on the tract. Counsel also stated that he "advised [Stern] that he may at his option wait for the determination by [the] State" and that Stern "told [counsel] [that] [Stern] will wait for the final outcome by the State . . . and close the sale at the time when the cleanup ha[s] been completed and [the] State decide[s] whether it would pursue [Stern] for reimbursement of any part of the fines or lien[s] imposed against the property."

According to the Referee,

"[she] did not grant any extensions to close based upon an environmental oil spill. Instead, the former counsel to the Plaintiff gave the successful bidder the option to wait until there was some sort of resolution regarding the oil spill prior to closing. This problem was not disclosed until after the public auction sale. At that time the successful bidder could have elected not to proceed with the terms of sale and his deposit would have been returned under these particular set of circumstances. Instead, the successful bidder elected to negotiate a settlement associated with the costs of the clean-up.

"It was never contemplated that this issue would take several years to be resolved. No closing was ever scheduled by the Referee, or any attempt to close by the Plaintiff's counsel or counsel for the successful bidder until April, 2007, until it appeared that the spillage problem was resolved to the successful bidder's satisfaction. By letter dated April 20, 2007, the referee sent a letter declaring time was of the essence to close."

While the Referee's April 20 letter stated that Stern was to comply with the terms of sale contained in the memorandum of sale and complete the sale within 30 days, she subsequently extended Stern's time to close pending his receipt of a response to his letter to plaintiff's counsel objecting to paying interest on the amount of the bid. By a subsequent letter, the Referee stated that Stern's time to close had expired and that she was not consenting to extend the time to close to resolve Stern's objection to her directive that he pay at the closing tax obligations that were assessed after the auction. She went on to state that Stern and plaintiff should amicably resolve the tax issue and schedule a mutually agreeable date for the closing.

After Supreme Court denied Stern's motion to compel the Referee to deliver the deed to the tract to him free of any charges for interest and taxes assessed after the auction, and granted plaintiff's cross motion to compel the Referee to complete the sale pursuant to the terms of sale, the parties entered into a stipulation. The stipulation provided that (1) the closing would occur and Stern would pay the balance of the amount due on his bid, and (2) Stern would place in escrow the amount of the interest and taxes assessed after the auction pending the resolution of his appeal from the order.

The relevant language of the terms of sale with respect to Stern's obligation to pay interest on the amount of his bid states that "[t]he Referee is not required to send any notice to the purchaser; if purchaser neglects to call at the time and place . . . specified to receive his deed, he will be charged with interest thereafter on the whole amount of his purchase, *unless the*

*Referee shall deem it proper to extend the time for the completion of said purchase*" (emphasis added). Based on the evidence in the record, an issue of fact exists regarding whether the Referee extended the time for the completion of the purchase. Stern averred that the Referee extended the time for closing the sale by acquiescing in his request that the closing be conducted after the State's cleanup efforts were completed and the State determined whether it would seek from Stern reimbursement for the costs of those efforts. Stern's position is buttressed by the letter of plaintiff's former counsel indicating that the Referee was aware of Stern's concerns regarding the state of the tract and that both plaintiff and Stern were content to conduct the closing after the State completed its work on the tract and made a decision regarding whether to seek reimbursement from Stern. Notably, the Referee never scheduled a closing date and, prior to April 2007, did not seek to compel the parties to conduct the closing. The Referee's averment that she "did not grant any extensions to close based upon an environmental oil spill" does not require the rejection of Stern's contention that the Referee acquiesced in his request that the closing be conducted after the State's remediation efforts were completed and it had determined whether to seek reimbursement from Stern.

In concluding that a hearing is not warranted on the issue of whether the Referee extended the time to conduct the closing, the majority finds that the closing was scheduled for July 8, 1999 and that Stern "failed to close" on that date. To be sure, the terms of sale provide that the balance of the purchase price was supposed to be tendered to the Referee at her office on July 8, 1999. However, nothing in the record sheds any light on why a closing was not conducted on that date and the Referee averred that "[n]o closing was ever scheduled by [her]" and no "attempt [was made] to close by the Plaintiff's counsel or counsel for the successful bidder until April, 2007." Indeed, plaintiff does not even suggest that a closing was scheduled for July 8, 1999. Thus, whether July 8, 1999 was a closing date, and if so, whether the Referee "deem[ed] it proper to extend the time" for conducting the closing are factual issues that cannot be resolved on this record.

The majority's assertion that, "upon Stern's failure to close on July 8, 1999, the Referee had the option to cancel the transaction and conduct another sale or grant an adjournment subject to Stern's payment of interest" is manifestly wrong. The plain meaning of the terms of sale show that the Referee had a third option under the agreement, one that would relieve Stern of the obligation to pay interest: "deem it proper to extend the time"

to conduct the closing. For this reason, contrary to the majority's claim, Stern is not committed to the proposition that the Referee waived interest "simply by granting his request for an adjournment."

According to the majority, "[u]nder a proper construction" of the interest provision, "interest would be waived where the closing is adjourned at the Referee's instance." The majority thus improperly rewrites the relevant clause of the interest provision. Although the clause specifies that the purchaser will be charged interest "unless the Referee shall deem it proper to extend the time for the completion of [the] purchase," the majority's "proper construction" reads it as if it stated "unless the Referee shall have adjourned the completion of the purchase." This is error (*see Matter of Salvano v Merrill Lynch, Pierce, Fenner & Smith*, 85 NY2d 173, 182 [1995] ["The court's role is limited to interpretation and enforcement of the terms agreed to by the parties; it does not include the rewriting of their contract and the imposition of additional terms"]).

Supreme Court relied on CPLR 5001 (a) to support its conclusion that Stern should pay interest on the amount of his bid for the period between the auction and the closing. CPLR 5001, however, is wholly inapplicable to the issue of whether Stern must pay interest. That statute dictates when a court may award interest on a *verdict or decision* on a cause of action. Here, however, interest is not being sought on a verdict or decision but on the amount of Stern's bid. Thus, the issue of interest on the amount of the bid must be resolved by reference to the contract between the parties.

Accordingly, I would remand the matter for a hearing on the issue of whether "the Referee . . . deem[ed] it proper to extend the time for the completion of [the] purchase" and, if not, the amount of interest that has accrued under the terms of sale. [*See* 19 Misc 3d 240.]