Conor MURPHY, Plaintiff,

v.

CANADIAN IMPERIAL BANK OF COMMERCE, as the plan sponsor and parent corporation of the employer, et al., Defendants.

No. 10 Civ. 0092(VM).

United States District Court, S.D. New York.

April 29, 2010.

David A. Mintz, Weissman & Mintz LLC, New York, NY, for Plaintiff.

Lloyd S. Clareman, New York, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Conor Murphy ("Murphy") brought this action against defendants Canadian Imperial Bank of Commerce ("CIBC"), CIBC World Markets ("World Markets"), Matthew Asman ("Asman"), and the CIBC USA Severance Pay Plan for Employees Earning an Annual Base Salary of U.S. $50,000 or More (the "Severance Plan") (collectively, "Defendants"). Murphy's complaint (the "Complaint") asserts that he, as a participant in the Severance Plan, has the right to severance benefits that Defendants allegedly withheld in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. Specifically, Murphy asserts his ERISA claim under 29 U.S.C. §§ 1109 and 1132(a)(1)(B).

By letter, dated March 9, 2010 (Docket No. 4), Defendants brought to the Court's attention the threshold issue of whether the Court must order arbitration. Upon review of that letter, which the Court deems a motion to compel arbitration, the Court directed Murphy to show cause why the action should not be dismissed in favor of arbitration. Murphy responded by letter, dated March 22, 2010 (Docket No. 6), contending that the parties did not agree to arbitrate claims asserted under the Severance Plan. Defendants, in response to the Court's direction to respond to Murphy's letter, submitted a letter on April 5, 2010 (Docket No. 9).

Upon review of the Complaint and the letter briefs addressing Defendants' contention that the parties' dispute in this action is subject to an arbitration agreement, the Court examines whether to compel Murphy to arbitrate his claims pursu-

ant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA"). For the reasons discussed below, the Court grants Defendants' application, orders the parties to proceed to arbitration, and dismisses the Complaint.

## I. BACKGROUND [1]

Before the termination of his employment on October 30, 2007, Murphy had work for CIBC World Markets for nearly eleven years. Murphy's ERISA claims against Defendants are, according to Murphy, properly asserted because, pursuant to the Severance Plan, he is a "participant," 29 U.S.C. § 1002(7), CIBC is a "plan sponsor" and "fiduciary," *id.* §§ 1002(16), 1002(21)(A), World Markets is an "employer," *id.* § 1002(5), Asman, Senior Director of CIBC's Human Resources Department, is a "plan administrator" and "fiduciary," *id.* §§ 1002(16)(A)(I) and 1002(21)(A), and the Severance Plan itself is an "employee benefit plan," *id.* § 1002(3).

According to Murphy, the Severance Plan provided him with the right to a lump-sum severance payment if several conditions, alleged in the Complaint to have occurred, are satisfied. The Court will not delineate the conditions and concomitant allegations here, as the issue presently before the Court is the narrower, threshold question of whether the claim Murphy asserts here is covered by a valid arbitration agreement.

In early 2008, months after Murphy's termination, he and World Markets entered into an Agreement and Release (the "Agreement and Release").[2] The parties have focused the Court's attention on aspects of two provisions in that agreement: the arbitration clause in paragraph eighteen (the "Arbitration Provision") and the reservation of rights to pursue claims under the Severance Plan in paragraph six (the "Reservation of Rights Provision"). The Arbitration Provision states:

> Both parties agree that *any* controversy or *claim arising out of or relating to this Agreement, Murphy's employment, or the termination therefrom, including,* for example, *any claim for* breach of contract, tort, discrimination, sexual or other harassment, retaliation, *the violation of any* state, *federal* or local *or other statute,* regulation or ordinance, or the common law or public policy, shall be submitted to final and binding arbitration, to be held in accordance with the NASD Arbitration Rules and Procedures (except to the extent they are inconsistent with the provisions of this paragraph).... In agreeing to arbitrate your claims, you recognize that you are giving up your right to a court or jury trial.

(Agreement and Release ¶ 18. (emphasis added)) The Reservation of Rights Provision (set in a paragraph with broad language governing the released claims) is a narrow carve-out from the release and states:

---

1. Except where otherwise noted, the facts below are taken from the Complaint and the documents attached to it or incorporated to it by reference. The Court accepts these facts as true at the pleading stage. *See Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 180 (2d Cir.2008). Other than where specifically referenced, no further citation to these sources will be made.

2. The Court may properly consider the Agreement and Release, even though it was not attached to or incorporated by reference in the Complaint, because a court is permitted to consider documents outside the pleadings for the purposes of determining the arbitrability of a dispute. *See Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.,* 263 F.3d 26, 32–33 (2d Cir.2001); *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.,* No. 06 Civ. 839, 2006 WL 2265041, at *3 (S.D.N.Y. Aug. 8, 2006).

It is expressly agreed and acknowledged that Murphy does not release or discharge any rights or claims he may have under [World Market's Severance Plan.] As of the date of this Agreement, Murphy represents that other than a potential claim for severance under the [Severance Plan,] Murphy has no pending claims of any sort against CIBC, or any of its predecessor entities.

(*Id.* ¶ 6.)

## II. *DISCUSSION*

### A. *THE FAA AND STRONG FEDERAL POLICY IN FAVOR OF ARBITRATION*

■ The decision of whether the Court must compel arbitration is governed by the FAA. *See* 9 U.S.C. § 2 ("A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). "The FAA was enacted to promote the enforcement of privately entered agreements to arbitrate, 'according to their terms.'" *Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 294 (2d Cir.1999) (*quoting Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 54, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995)). "[T]he FAA compels judicial enforcement of a wide range of written arbitration agreements," *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 112, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001), and applies to agreements to arbitrate disputes arising out of employment in the securities industry, *see, e.g., Salvano v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 85 N.Y.2d 173, 623 N.Y.S.2d 790, 647 N.E.2d 1298 (1995); *Flanagan v. Pruden-tial–Bache Sec., Inc.*, 67 N.Y.2d 500, 504 N.Y.S.2d 82, 495 N.E.2d 345 (1986).

Well-established federal public policy strongly favors arbitration as an alternative path toward the resolution of a dispute. *See Chelsea Square Textiles*, 189 F.3d at 294 ("Through the FAA, Congress has declared a strong federal policy favoring arbitration as an alternative means of dispute resolution." (quotation marks omitted)); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir.1987) ("[The FAA] is "a Congressional declaration of a liberal federal policy favoring arbitration agreements ....""" (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (quotation marks omitted))). Indeed, "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [the Second Circuit has] often and emphatically applied." *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir.2006) (quotation marks omitted). This policy "requires [the Court] to construe arbitration clauses as broadly as possible." *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 19 (2d Cir.1995) (quotation marks omitted).

■ However, as a general principle, no party may be required to submit to arbitration any dispute that it has not agreed to arbitrate. *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir.1996) (*quoting AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)); *see also Bell v. Cendant Corp.*, 293 F.3d 563, 566–67 (2d Cir.2002).

### B. *WHETHER THE COURT MUST COMPEL ARBITRATION*

■ To determine whether to compel arbitration, the Court must weigh three primary considerations: (1) whether the

parties agreed to arbitrate; (2) whether the plaintiff's claims fall within the scope of that agreement; and (3) if federal statutory claims are at issue, whether Congress intended those claims to be non-arbitrable. *See Genesco*, 815 F.2d at 844.

### 1. The Parties Agreed to Arbitrate

The Agreement and Release contains an express Arbitration Provision. (*See* Agreement and Release ¶ 18.) Murphy had full knowledge of the Arbitration Provision, having agreed to its terms in writing after the termination of his employment in exchange for receiving consideration from World Markets. In the Agreement and Release itself, immediately below the Arbitration Provision, Murphy:

> acknowledge[d] and agree[d]that [his] release and waiver of rights and claims ... is knowing and voluntary, that [he] has been instructed to consult an attorney prior to signing this Agreement, and that [he] has been given 21 days to consider this Agreement. Murphy further acknowledges and understands that Murphy has the right to revoke this Agreement within seven (7) days of the execution of this Agreement and that this Agreement is not effective or enforceable until this seven-day revocation period has expired.

(*Id.* ¶ 19.)

Accordingly, the Court finds that the parties agreed to arbitrate.

### 2. Murphy's Claims Fall Within the Scope of the Arbitration Agreement

Murphy asserts that the Arbitration Provision does not encompass his present ERISA claim. The Arbitration Provision, however, is broad and explicitly encompasses *any claim* arising out of the Agreement and Release, or Murphy's employment or termination therefrom, including claims for "the violation of any ... federal ... or other statute ...." (*Id.* ¶ 18.) Murphy here asserts a federal statutory cause of action under ERISA. Thus, his claim clearly relates to his employment or termination by World Markets, and falls squarely within the scope of the Arbitration Provision. *See Genesco*, 815 F.2d at 846 ("If the allegations underlying the claims 'touch matters' covered by the parties' ... agreements, then those claims must be arbitrated ...." (*quoting Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 625 n. 13, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985))).

Murphy, however, contends that his claims do not fall under the purview of the Arbitration Provision because the parties specifically carved out from that provision his right to pursue claims relating to the Severance Plan in the Reservation of Rights Provisions. (*See* Agreement and Release ¶ 6.) The Court is not persuaded. The language in paragraph six expressly excludes one type of claim from Murphy's release or discharge of any rights he may have had against Defendants: those arising under the Severance Plan. Murphy's preservation of his right to pursue claims under the Severance Plan (while releasing all others) cannot reasonably be construed to also allow him to pursue Severance Plan claims outside of the arbitral forum. The language in the Reservation of Rights Provision does not reference in any way Murphy's ability to institute claims outside of arbitration. (*See id.*)

Further, an interpretation of the Reservation of Rights Provision to allow Murphy to prosecute claims outside of arbitration would effectively render the language in the Arbitration Provision meaningless. Murphy released his rights to assert all claims except those he had under the Severance Plan. Thus, the Agreement and Release does not bar Murphy from commencing dispute resolution proceedings to

enforce the rights he reserved against Defendants under the Severance Plan. If the Court were to read the Reservation of Rights Provision to allow Murphy to pursue action outside of arbitration to adjudicate disputes relating to his one type of non-released claims, the Agreement and Release would contain an Arbitration Provision that would apply only to claims that Murphy released. Thus, no claims would be left that could be resolved through arbitration, rendering the Arbitration Agreement purely superfluous and meaningless.

■ Even if there were ambiguity as to the scope of the claims that fall within the Arbitration Provision because of the Reservation of Rights Provision, "the Supreme Court has instructed that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration ....'" *Chelsea Square Textiles,* 189 F.3d at 294 (*quoting Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24–25, 103 S.Ct. 927). As such, courts "will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Collins & Aikman Prods. Co. v. Building Sys., Inc.,* 58 F.3d 16, 19 (2d Cir.1995) (quotation marks omitted); *see also Thomas James Assocs. v. Jameson,* 102 F.3d 60, 65 (2d Cir.1996).

Lastly, assuming for the sake of argument that a question of arbitrability exists here, the arbitrator, not the Court, should decide that question. *See Green Tree Financial Corp. v. Bazzle,* 539 U.S. 444, 451–52, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003). Thus, the Court is persuaded that Murphy's claim falls within the scope of the Arbitration Provision.

3. *Congress Did Not Intend the Federal Statutory Claims at Issue to Be Non–Arbitrable*

■ "[H]aving made the bargain to arbitrate, the party should be held to it

unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *14 Penn Plaza, LLC v. Pyett,* —— U.S. ——, 129 S.Ct. 1456, 1465, 173 L.Ed.2d 398 (2009) (quotation marks omitted) (alteration omitted); *see also Oldroyd v. Elmira Sav. Bank, FSB,* 134 F.3d 72, 78 (2d Cir. 1998) (*citing Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)). "The burden of showing ... legislative intent [to preclude arbitration] lies with the party opposing arbitration." *Oldroyd,* 134 F.3d at 78 (*citing Gilmer,* 500 U.S. at 26, 111 S.Ct. 1647); *see also Shearson/American Exp., Inc. v. McMahon,* 482 U.S. 220, 227, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). Murphy asserts only a federal statutory claim under ERISA. The Second Circuit has held that Congress has not evinced an intention to preclude a waiver of judicial remedies for ERISA claims. *See Bird v. Shearson Lehman/Am. Express, Inc.,* 926 F.2d 116, 118–22 (2d Cir.1991). Murphy has not offered any support for the proposition to the contrary. The Court therefore concludes that Congress did not intend ERISA claims to be non-arbitrable.

Thus, the Court holds that it must compel arbitration because (1) Murphy and World Markets agreed to arbitrate; (2) Murphy's claims fall within the scope of the Arbitration Provision; and (3) Congress did not intend for the ERISA cause of action at issue to be non-arbitrable.

C. *DISMISSAL OF THE ACTION*

The FAA directs the district court, "on application of one of the parties," to enter a stay in a case where the asserted claims are "referable to arbitration." 9 U.S.C. § 3; *see also Shearson/American Express,* 482 U.S. at 226, 107 S.Ct. 2332; *NPS*

*Communc'ns, Inc. v. Continental Group, Inc.,* 760 F.2d 463, 465 (2d Cir.1985). However, "[a]ll courts of which we are aware have followed the rule that, '[w]here all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings.'" *Spencer–Franklin v. Citigroup/Citibank N.A.,* No. 06 Civ. 3475, 2007 WL 521295, at *4, 11 (S.D.N.Y. Feb. 21, 2007) (quoting *Rubin v. Sona Int'l Corp.,* 457 F.Supp.2d 191, 198 (S.D.N.Y. 2006)) (second alteration in original) (collecting cases); *see also Kowalewski v. Samandarov,* 590 F.Supp.2d 477, 491 (S.D.N.Y.2008); *Drakeford v. Washington Mut.,* No. 07 Civ. 3489, 2008 WL 2755838, at *4 (S.D.N.Y. July 11, 2008). Because the Court has determined that all of Murphy's claims must be submitted to arbitration, the Court dismisses this action without prejudice.

## III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that upon review of the letters dated March 9, 2010 and April 5, 2010 submitted by the defendants Canadian Imperial Bank of Commerce, CIBC World Markets Corp., Matthew Asman, and CIBC USA Severance Pay Plan for Employees Earning an Annual Base Salary of U.S. $50,000 or More, (collectively, "Defendants"), which the Court deems a motion for an order to compel arbitration and grounds in support of such an application, and the response of plaintiff Conor Murphy ("Murphy") by letter dated March 22, 2010, the Court grants Defendants' motion to compel arbitration; and it is further

**ORDERED** that Murphy's complaint is dismissed without prejudice.

The Clerk of the Court is directed to withdraw any pending motions and to close this case.

**SO ORDERED.**